UNITED STATES DISTRICT COURT　　　　FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

KENT MORRIS,

                Petitioner,　　　　　　　　　MEMORANDUM
                                               AND ORDER
                                               07-CV-3418 (JG)

       -against-

THE PEOPLE OF THE STATE OF NEW
YORK,

                Respondent.
----------------------------------------------------------------x
A P P E A R A N C E S :

    KENT MORRIS
        04A6675
        Wyoming Correctional Facility
        P.O. Box 501
        Attica, NY 14011-0501
        Petitioner, *Pro Se*

    ANDREW M. CUOMO
        Attorney General of the State of New York
        120 Broadway, 22nd Floor
        New York, NY 10271
  By:   Lisa Fleischmann
        Ashlyn Dannelly
        Attorney for Respondent

JOHN GLEESON, United States District Judge:

        Kent Morris, currently incarcerated in Wyoming Correctional Facility in Attica, New York, petitions *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in New York State Supreme Court for rape, sodomy,[1] assault, unlawful imprisonment and incest. For the reasons that follow, the petition is denied.

---

      [1]    At the time of Morris's conviction, N.Y. Penal Law § 130.50 was titled "Sodomy in the first degree." In 2003, it was retitled "Criminal sexual act in the first degree." 2003 N.Y. Sess. Laws ch. 264. In this opinion, I use the title of the offense of conviction at the time.

BACKGROUND

A.   *The Offense Conduct*

Morris was convicted of abducting and sexually abusing his niece J.M.[2] on October 29, 2002 and unlawfully imprisoning her until November 3, 2002. The government's evidence at trial established that in the early 1990s, J.M., then a teenager, lived with her siblings and Morris in Belize after the death of her mother. Trial Tr. 360, 375-79, 545-47. Morris repeatedly threatened J.M., beat her, and had sexual intercourse with her against her will during this period. *Id.* at 384-86, 388-92.

In 2001, Morris moved himself, his family, J.M., and J.M.'s younger brother to New York. *Id.* at 392-93. As she had nowhere to go, J.M. lived with her younger brother, Morris, and Morris's wife and son in an apartment in Brooklyn, and worked for Morris's construction company. *Id.* at 396-97, 400, 531-32.[3]

On October 29, 2002, Morris drove J.M., who was 27 years old at that point, to a job site according to his usual routine. *Id.* at 400-01. He then drove her away from the site, accusing her of being in love with an electrician at the job site and punching her repeatedly while he drove. *Id.* at 402-05. Morris drove J.M. to an empty house in Queens belonging to a relative. *Id.* at 403, 405, 536. When inside the house, Morris threatened J.M., *id.* at 410-11; forced her to undress, *id.* at 407-08; photographed her while naked, *id.* at 409; struck and choked her, *id.* at 409-11; forced her to leave a voicemail message for the electrician he suspected her of being in

---

[2] In order to protect the victim's privacy, I refer to her by her initials and have granted the government's application to place the record of the proceedings in state court under seal.

[3] J.M. testified that over the subsequent six months, Morris forced J.M. to have sex with him approximately eight times, Trial Tr. 397-98, but the trial court struck this testimony as not covered by its pretrial ruling that evidence of Morris's sexual abuse in Belize was admissible, *id.* at 399-400.

love with, *id.* at 410; forced her to have intercourse with him, using a condom, *id.* at 411-12; and forced her to perform oral sex on him while he photographed her, *id.* at 412-13.

Morris brought J.M. back to his house later that day and, threatening her, forbade her to leave except while accompanying him, and listened to her telephone calls. *Id.* at 415-17, 549-50. This continued until November 3, 2002, when Morris left the house without J.M. and she escaped to her cousin's house. *Id.* at 417-20. Morris searched for J.M. for several days, and J.M. contacted the police on November 6, 2002. *Id.* at 421, 424, 539, 551-52.

The Queens Special Victims Squad was unable to locate Morris for several months. On August 12, 2003, a detective contacted Morris by telephone, and he stated that he had been having sex with J.M. for years and that she would never betray him by cooperating with the police. *Id.* at 594-95. Morris was finally located and arrested on December 3, 2003. *Id.* at 603, 756-58.

B.   *The Procedural History*

Morris was tried by jury from October 25, 2004 to November 8, 2004. In a suppression hearing after jury selection, the trial court ruled that the government could introduce evidence of Morris's sexual abuse of J.M. in Belize. *Id.* at 307-08. The government argued that the evidence of prior sexual contact would be relevant to negate any consent defense; that it was relevant "background" information; and that the evidence established that J.M. was afraid of Morris, which itself helped both to establish the element of forcible compulsion and also to explain why J.M. was initially reluctant to escape or report the incident. *Id.* at 7, 292-93, 298-300. Morris argued that since his defense was that the incident did not occur, not that J.M. consented, and since there was significant additional evidence of forcible compulsion, the

3

evidence served no purpose besides suggesting that he had a propensity for sexual abuse. *Id.* at 297, 300-01. The trial court deemed the evidence admissible regarding the rape and sodomy counts in order to prove forcible compulsion, but inadmissible with respect to the incest count, which lacked a forcible compulsion element, and deemed it admissible subject to a limiting instruction. *Id.* at 305-06, 321.

Morris was convicted on all counts and sentenced principally to an aggregate determinate eight-year term of imprisonment. Sentencing Tr. 17. He appealed his conviction, arguing that the trial court erred in allowing the evidence of his uncharged sexual abuse in Belize and in allowing the prosecutor to cross-examine Morris's wife regarding another abuse allegation against Morris. The Appellate Division, Second Department affirmed his conviction on November 28, 2006. *People v. Morris* (*Morris I*), 823 N.Y.S.2d 915 (2d Dep't 2006). The New York Court of Appeals denied leave to appeal on March 28, 2007, *People v. Morris* (*Morris II*), 8 N.Y.3d 925 (2007) (Read, J.), and on June 13, 2007 denied Morris's *pro se* motion for reconsideration of its earlier denial, *People v. Morris* (*Morris III*), 9 N.Y.3d 848 (2007) (Read, J.).

Morris filed this petition in the United States District Court for the Western District of New York on April 26, 2007. The petition was subsequently transferred to this court. Morris in his petition appears to argue (1) that the government produced insufficient evidence to allow a reasonable jury to find that a crime was committed in Queens or at all; (2) that J.M. committed perjury in front of the grand jury by claiming that Morris ejaculated when she

performed oral sex on him; and (3) that the trial court erred in admitting evidence of his past sexual abuse of J.M.[4]

## DISCUSSION

A.  *The Legal Standards*

    1.  *Exhaustion and Procedural Default*

28 U.S.C. § 2254(b) prevents a federal court from granting a petition for a writ of habeas corpus unless the petitioner has first exhausted all available state judicial remedies. In order to have exhausted state remedies, a petitioner must have "fairly presented" his federal constitutional claims to the highest state court by apprising it of "both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Att'y Gen.*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*). An unexhausted claim that can no longer be exhausted is deemed procedurally defaulted. *See Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2000) ("[W]hen 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present these claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts must also deem the claims procedurally defaulted." (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991))).

A claim actually procedurally defaulted in state court generally cannot be reviewed on the merits. *See Harris v. Reed*, 489 U.S. 255, 260-62 (1989) (explaining rationale for habeas corpus procedural default rule); *see also Coleman*, 501 U.S. at 750 (noting a state's interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in

---

[4] Morris also cryptically complains of the government's offer of a lesser charge, stating, "I did not commit[] any crime in Queens against the witness, so how can he offer me [a] sentence to [a] lesser charge?" Pet. 7. This statement does not appear to be an additional ground for relief but rather a reiteration of his protestations of innocence. Even if Morris intended this statement to be an additional claim, I would dismiss it as procedurally barred for the reasons stated below.

having an opportunity to correct its own errors"). However, there are several circumstances in which a federal claim which is procedurally defaulted -- or deemed procedurally defaulted due to the exhaustion requirement -- will still be reviewable on a federal petition for habeas corpus.

First, a petitioner is entitled to review of a procedurally defaulted claim if he can show "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750. A petitioner may establish cause by showing "'that the factual basis for a claim was not reasonably available to counsel . . . or that some interference by officials . . . made compliance impracticable.'" *Id.* at 753 (internal quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, a petitioner must demonstrate that the alleged error worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted).

Second, if a petitioner cannot show cause and prejudice, his procedural default may still be excused if he can demonstrate that a fundamental miscarriage of justice would result from a failure to hear the claim on the merits -- that is, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This ground for excusing procedural default should be applied only in "extraordinary" cases, as courts deem substantial claims of actual innocence "extremely rare." *Schlup*, 513 U.S. at 321-22.[5]

---

[5] A procedural bar actually relied on by a state court to dispose of a claim may be found inadequate to prevent federal review on rare occasions where the state court applies the procedural bar in an "exorbitant" manner. *Lee v. Kemna*, 534 U.S. 362, 376 (2002). This doctrine has no apparent application in a case in which an unexhausted claim is deemed procedurally defaulted, as that is a case in which by definition no state court has applied a procedural bar in any manner, exorbitant or otherwise.

2.  *Review of State Court Adjudications on the Merits Under AEDPA*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") circumscribes the scope of federal habeas review of state convictions regarding claims the state court adjudicated on the merits. 28 U.S.C. § 2254(d). A federal habeas court may overturn a state court's ruling on the merits of a claim only if the state decision was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*[6]

The Supreme Court has interpreted the phrase "clearly established Federal law, as determined by the Supreme Court of the United States" to mean "the holdings, as opposed to the dicta," of its decisions at the time of the state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 412-13.

A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413. An unreasonable application is more incorrect than a merely erroneous one, *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (citing *Williams*, 529 U.S. at 411), but while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas

---

[6] This limited scope of review is often referred to as "AEDPA deference." *E.g.*, *Jimenez v. Walker*, 458 F.3d 130, 135 & n.2 (2d Cir. 2006).

relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence," *Gilchrist*, 260 F.3d at 93 (internal quotation marks omitted) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it refers to federal law in its decision. *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B.  *Morris's Claims*

 1.  *Sufficiency of the Evidence*

Morris did not raise this claim on appeal. Because he could have raised this claim on direct appeal, he cannot now raise it in a state collateral attack on his conviction. *See* N.Y. Crim. Proc. Law § 440.10(2)(c) (barring relief under § 440.10 when the claim could have been raised on appeal but was not); *People v. Bachert*, 69 N.Y.2d 593, 598 (1987) (noting that a writ of error coram nobis only applies to violations of constitutional rights not appearing on the record on direct appeal). Accordingly, it is unexhausted and can no longer be exhausted, and is thus deemed procedurally defaulted. *See Aparicio*, 269 F.3d at 90 (requiring federal courts to deem such claims procedurally defaulted).

Morris does not attempt to show cause and prejudice, and I do not find any. While he does assert that he is actually innocent, he does not support this claim with any "new reliable evidence" that would allow me to find that he makes a substantial showing of actual innocence. *See Schlup*, 513 U.S. at 324 (requiring petitioners to produce "new reliable evidence" in order to sustain a claim of actual innocence); *see also id.* at 327 (requiring a petitioner to show

that "it is more likely than not that no reasonable jury would have convicted him in light of the new evidence"). Accordingly, the claim is procedurally barred.

Even were I to reach the merits of this claim, I would deny it. A challenge to the sufficiency of the evidence can succeed only if, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A reviewing court "will not disturb the jury's findings with respect to the witnesses' credibility." *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989). Here, the jury received ample testimony from J.M. indicating that the charged crimes were committed. This testimony was corroborated by J.M.'s sister's testimony that J.M., crying and bruised, stated on November 3, 2002 that she had been raped, Trial Tr. 550-51, and by the police testimony that Morris acknowledged that he had been having sex with J.M. for years, *id.* at 594-95. The jury was not unreasonable in crediting this testimony and finding Morris guilty.[7]

2. *Perjury by the Complaining Witness*

Morris argues that J.M.'s grand jury testimony that Morris ejaculated during the oral sex is perjury in light of her testimony at trial that he did not. Trial Tr. 520-23. Morris first raised this issue in his *pro se* submission seeking reconsideration of the New York Court of Appeals' denial of leave to appeal. Dannelly Decl. Ex. G. However, where a claim was presented for the first time in an application to the state's highest court for discretionary review

---

[7] Morris's petition seems to claim that there was insufficient evidence to indicate that his prosecution in Queens complied with New York's venue statute. Pet. 7 ("I was living in Bklyn N.Y. where I was arrested and drag [sic] to Queens without any proof that these crimes was committed in Queens."). Even if New York's venue statute, N.Y. Crim. Proc. Law § 20.40, somehow implicated a federal issue, I would still deny the claim on the merits, as the jury could reasonably have concluded that the crime was committed in Queens based on the testimony of J.M. that the crime was committed at a house in Queens and the testimony of one of the detectives that J.M. recognized the Queens house as the scene of the crime. Trial Tr. 405, 536, 770-75.

and is thereby procedurally barred, it is deemed procedurally defaulted.  *St. Helen v. Senkowski*, 374 F.3d 181, 183-84 (2d Cir. 2004).  For the reasons stated in Section B.1, above, Morris's procedural default is not excused.

Even were this claim not procedurally defaulted, I would deny it on the merits.  Error occurring only before a grand jury is harmless beyond a reasonable doubt if followed by a conviction at trial.  *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989).

3. *Admission of Evidence of Past Sexual Abuse*

Morris argued on appeal that he was denied due process of law by the trial court's admission of testimony related to his past sexual abuse of J.M.  The Appellate Division denied this claim on the merits, *Morris I*, 823 N.Y.S.2d at 915, and thus my review of this denial is subject to AEDPA's limitations.  A defendant is denied due process of law when the introduction of prejudicial evidence "is so extremely unfair that its admission violates fundamental conceptions of justice."  *Dowling v. United States*, 493 U.S. 342, 352 (1990); *see also Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (noting that erroneous admissions of evidence not rising to the level of unfairness specified in *Dowling* are not grounds for habeas corpus relief).

Morris was not denied due process of law by the admission of testimony regarding his prior sexual abuse of J.M.  The trial court correctly applied New York law, which allows evidence regarding prior bad acts, including sexual abuse, to prove the element of forcible compulsion even when the defense is not consent, if its probative value exceeds its prejudicial effect.  *See People v. Cook*, 93 N.Y.2d 840, 841 (1999) (affirming admission of evidence of the defendant's prior violence to the victim to prove forcible compulsion in forcible rape case, even when the defense was not consent); *People v. Chaffee*, 816 N.Y.S.2d 615 (3d Dep't 2006)

(affirming admission of evidence of the defendant's prior sexual abuse of the victim, his stepdaughter, to prove forcible compulsion in a forcible rape case where the defense was not consent). The balance between the probative value the prejudicial effect of uncharged crime evidence is "a matter to be determined by the trial court in each case in the sound exercise of its discretion." *People v. Alvino*, 71 N.Y.2d 233, 247 (1987); *see also Cook*, 93 N.Y.2d at 841 (similar, citing *Alvino*).

Morris claims that forcible compulsion, though an element of the rape and sodomy charges, N.Y. Penal Law §§ 130.35(1), 130.50(1) (2002), could be established by J.M.'s testimony that Morris beat her when he abducted her, thus negating the probative value of the evidence of Morris's prior sexual assaults. Although J.M.'s description of Morris's behavior gave some evidence probative of forcible compulsion, it was not an abuse of discretion for the trial court to conclude that the evidence of Morris's pattern of sexually abusive and threatening behavior towards J.M. was also significantly probative, and that this probative value outweighed the evidence's prejudicial effect. And while the evidence was not relevant for the incest charge, which has no forcible compulsion element, N.Y. Penal Law § 255.25, the trial court issued a limiting instruction, Trial Tr. 413-14. Thus, the trial court's ruling was correct under New York law.

Additionally, even if the introduction were erroneous under state law, it is doubtful that this error would violate "fundamental conceptions of justice" as required to amount to a deprivation of due process under the federal constitution, *Dowling*, 493 U.S. at 352, in light of Federal Rule of Evidence 413, which renders evidence of prior sexual assaults presumptively admissible in a federal prosecution for sexual assault. Fed. R. Evid. 413; *see also United States*

11

*v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998) (holding Rule 413 constitutional). Certainly, the Appellate Division's conclusion that no federal constitutional right was violated was not an unreasonable application of *Dowling*.

## CONCLUSION

For the reasons stated above, the petition is denied. As Morris has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: March 29, 2008
      Brooklyn, New York